J-S68043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D., NATURAL FATHER | : | No. 1028 MDA 2017 |

Appeal from the Decree Entered May 26, 2017
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): A-8319

BEFORE:   LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY STRASSBURGER, J.:              **FILED NOVEMBER 30, 2017**

D.D. (Father) appeals from the decree entered May 26, 2017, in the Court of Common Pleas of Luzerne County, which terminated involuntarily his parental rights to his minor son, E.J.J. (Child), born in May 2004.[1]  We affirm.

The factual and procedural history of this matter is not entirely clear from the certified record.  Child entered foster care on February 4, 2014, due to a domestic violence incident involving Mother.  N.T., 5/26/2017, at 20.  Father was incarcerated at the time of Child's placement.  ***Id.***  Father was released from incarceration later that year, and participated in a visit with Child in November 2014.  ***Id.*** at 22.  Luzerne County Children and Youth Services (CYS) offered Father additional visits with Child every other week, but Father "never followed up."  ***Id.***

---

* Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, H.J. (Mother), passed away in August 2016.

On May 7, 2015, CYS filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court scheduled a termination hearing for July 2015. However, the court continued the hearing twice and then held the matter in abeyance by order entered December 22, 2015. On February 23, 2017, CYS filed a motion to schedule a termination hearing, which the court granted by order entered that same day. The court scheduled the hearing for April 2017, but continued the matter two more times, until May 26, 2017.[2]

Meanwhile, Father filed two motions to dismiss the termination petition on May 25, 2017. The orphans' court heard argument on the motions at the start of the May 26, 2017 termination hearing.[3] Father's counsel argued that the petition should be dismissed because Father had at least some contact with Child during the six months preceding the filing of the petition, and because Father was prejudiced by the court's delay in conducting the hearing. N.T., 5/26/2017, at 7-10. Specifically, Father's counsel argued that Father's ability to present evidence in his defense had eroded due to the passage of time. *Id.* at 9. The court denied the motions on the record, and conducted the hearing.[4] Following the hearing, the court entered a decree terminating

---

[2] In its opinion, the orphans' court explains that the delay in conducting the termination hearing resulted from Child's relationship with Mother and his "reluctance to be adopted." Orphans' Court Opinion, 7/24/2017, at 1.

[3] By the time of the termination hearing, Father was once again incarcerated. He participated in the hearing via telephone.

[4] The orphans' court entered orders denying the motions to dismiss on June 5, 2017.

Father's parental rights involuntarily. Father timely filed a notice of appeal on June 23, 2017, along with a concise statement of errors complained of on appeal.

Father now raises the following questions for our review.

I. Did the [orphans'] court abuse its discretion, commit an error of law, and/or was there insufficient evidentiary support in terminating the parental rights of [Father,] as the grounds pursuant to 23 Pa.C.S. § 2511(a)(1) were not established by clear and convincing evidence, and such granting of a petition to terminate parental rights was against the weight of the evidence presented by the parties[?]

II. Did the [orphans'] court abuse its discretion, commit an error of law and/or there was [sic] insufficient evidentiary support for the [orphans'] court's decision to not grant [Father] motion(s) to dismiss the petition for the termination of parental rights, which alleged that [Father] had contact with the minor child during the six-month statutory period and that the delay between the date of filing the petition for termination of parental rights and the date of hearing prejudiced [Father's] ability to present evidence and testimony in his defense[?]

Father's Brief at 2-3 (unnecessary capitalization and proposed answers omitted).

We first address Father's claim that the orphans' court erred and/or abused its discretion by involuntarily terminating his parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(1) and (b). Subsection 2511(a)(1) provides the following.[5]

---

[5] Father did not challenge the termination of his parental rights pursuant to subsection 2511(b) in his concise statement, nor does he include such a challenge in his statement of question involved, or in the argument section of his brief. Therefore, we conclude that any challenge to Section 2511(b) is waived. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (holding that the appellant waived her challenge to Section 2511(b) by failing to include it in her concise statement and statement of question involved).

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

To meet the requirements of subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze subsection 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances."

*Id.* (citation omitted). Importantly, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

Instantly, the orphans' court found that Father refused or failed to perform parental duties on Child's behalf after Child was placed in foster care in February 2014. Orphans' Court Opinion, 7/24/2017, at 8. The court reasoned that Father visited with Child only once prior to the filing of the termination petition on May 7, 2015. *Id.* at 6-10. The court found that Father made no other efforts to perform parental duties, as he did not send cards, letters, or gifts to Child, and did not speak with Child on the phone. *Id.* at 7-9.

In response, Father argues that the orphans' court failed to take into account his desire to have contact with Child, and the barriers put in place by Child's caseworker. Father's Brief at 18-19. Father argues that the caseworker did not permit him to have contact with Child via telephone and Facebook. *Id.* at 13-14, 18-19. Father further argues that the caseworker did not return his phone calls, and that he was unable to notify the caseworker that he wanted to provide Child with Christmas gifts in December 2014. *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, CYS presented the testimony of casework supervisor, Paul Guido. Mr. Guido testified that, following Child's placement

- 6 -

in foster care in February 2014, CYS attempted to contact Father "as often as possible," and offered him visits with Child. N.T., 5/26/2017, at 22. Mr. Guido was not sure when Father was released from incarceration. *Id.* at 21. However, CYS scheduled Father's first visit with Child in August 2014. *Id.* at 22. Father cancelled the visit. *Id.* CYS scheduled another visit for November 12, 2014, which Father attended. *Id.* at 22, 49, 57. Following that visit, Father "was given a schedule of the frequency of the visits that could take place every other week; same location, same time and everything else…. [Father] never followed-up." *Id.* at 22. Mr. Guido testified that Father did not visit with Child again until July 2015. *Id.* at 24. CYS scheduled a follow-up visit for August 2015, but Father failed to attend. *Id.* at 24-25. Father had no further contact with CYS after failing to attend the August 2015 visit. *Id.* at 25.

Mr. Guido additionally testified that Father performed no other significant parental duties on Child's behalf. *Id.* at 27. During the six months preceding the filing of the termination petition on May 7, 2015, Father did not provide financial support for Child, did not send letters or cards, did not provide gifts, and did not communicate with Child on the phone. *Id.* at 26. Father did not contact CYS or Child's foster home on a consistent basis to inquire about Child's well-being. [6] *Id.* at 27.

---

[6] Mr. Guido also testified that CYS scheduled "a Dr. Finn evaluation" for Father in January 2015, and offered Father transportation, but that Father failed to

The orphans' court also heard the testimony of Father. Father testified that he visited with Child once in November 2014, and that no further visits took place. *Id.* at 62, 79, 104. When the court asked Father why he failed to attend a second visit that CYS scheduled for him later that month, Father provided various explanations. At first, Father testified that he did not recall receiving a voicemail regarding that visit, and that Child's caseworker may have left him a voicemail at his old phone number. *Id.* at 72-73. Father then testified that he received a voicemail, and that "I returned her phone call several times." *Id.* at 75. Finally, Father admitted that he did not attend a second visit because "I put myself in a situation where I was in trouble with the law and I knew that if I went to the visit or something like that, I probably would have got caught." *Id.* at 78. Father did not attempt to schedule any additional visits with Child until he "went to the work release program" in October 2016. *Id.* at 78, 109. The court instructed Father that Child would need to go through counseling before visits could take place. *Id.* at 109.

Father focused the remainder of his testimony on criticizing Child's caseworker. Father testified that he and the caseworker had an argument over the phone following Father's visit in November 2014, and that the caseworker hung up on him. *Id.* at 77-78. After that, Father claimed the caseworker would not return his calls. *Id.* Father further testified that the

_____

complete the evaluation. N.T., 5/26/2017, at 21, 30. The record is not clear as to what "a Dr. Finn evaluation" is. However, the orphans' court indicates in its opinion that Father failed to undergo a psychological assessment. Orphans' Court Opinion, 7/24/2017, at 6.

caseworker refused to allow him to have contact with Child via telephone or Facebook. *Id.* at 63. Father claimed that he bought Christmas gifts for Child in December 2014, but that he did not make an effort to deliver the gifts because Child's caseworker did not like Father and "was always nasty with [him]." *Id.* at 65-67.

Thus, the record confirms that Father refused or failed to perform parental duties during the six months preceding the filing of the termination petition on May 7, 2015. Father attended only a single visit during the relevant six months, and made no other efforts to maintain or develop his relationship with Child. While Father blamed his failure to perform parental duties on Child's caseworker, the orphans' court was free to reject this testimony as incredible. Tellingly, Father changed his testimony twice during the hearing, and finally admitted that he chose not to continue visiting with Child because of his legal troubles. It is clear that Father has failed to display even a passive interest in Child, and that his minimal efforts are not enough to preserve his parental rights.

We next consider Father's claim that the orphans' court erred by denying his motions to dismiss the termination petition. Father argues that the lengthy delay in conducting the termination hearing resulted in "the erosion of [] Father's ability to present evidence due to the passing of time." Father's Brief at 24. Father observes that subsection 2511(a)(1) required the court to focus its analysis on his conduct during the six months preceding the filing of the termination petition. *Id.* at 20-21. Further, pursuant to subsection 2511(b),

the court could not consider any efforts initiated by Father after the filing of the petition.[7]  *Id.* at 21-24.  Thus, Father emphasizes, because CYS filed its petition on May 7, 2015, and because the hearing did not take place until May 26, 2017, the court was required to base its decision on evidence that was between two and two-and-a-half years old.  *Id.* at 14, 22-24.

In support of this argument, Father directs our attention to his testimony during the termination hearing, as well as the testimony of his ex-girlfriend, M.D.  *Id.* at 14, 23-24.  Father argues that this testimony demonstrates that he and M.D. were unable to remember important details about the case.  *Id.* at 23-24.  Father places particular emphasis on his answers to the following questions by the orphans' court.

> THE COURT: . . . . Did you give [Child's caseworker] both of your phone numbers[?]
>
> [Father]: I did, yeah.  I give [*sic*] her my new one, yeah.
>
> THE COURT: Okay.  Did you use your old one too?
>
> [Father]: No, I turned it off.
>
> ***
>
> THE COURT: Okay.  So when did you switch to your "new phone?"

---

[7] Subsection 2511(b) provides, in relevant part, that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."  23 Pa.C.S. § 2511(b).

- 10 -

[Father]: I got my new phone -- was like -- man, you're making me think all the way back.

THE COURT: Yes, I am. Take your time.

[Father]: I don't know, maybe August.

THE COURT: August of what year?

[Father]: Of 2014, something like that. I don't know.

N.T., 5/26/2017, at 74-75.

The orphans' court did not discuss Father's motions to dismiss in its opinion. However, the court provided the following rationale for denying the motions during the termination hearing.

[T]he case law also instructs that the [c]ourt cannot view cases grounded in 2511(a)(1) and in fact, I am to view the case in tot[al] and my lens is supposed to be broad, even though I am supposed to be initially guided by the six-months that precede the filing.

So I would be viewing this case in tot[al] and not in a vacuum and I would be able to perhaps set aside the [six-month period] within this inquiry. I'm not saying I would, and I'm certainly not prejudging the situation, but before you're afforded that opportunity, I think the paramount point that I have to acknowledge here is that 2511(b) is the controlling umbrella of this entire proceeding. That even if grounds are met, the Court must then make a separate inquiry pursuant to 2511(b) and make a determination within the child's best interest. As [counsel for CYS] aptly argued, if that testimony would prove that despite grounds being met, there were extenuating circumstances that would be outside of the child's best interest, then the Court would be constrained and would have to view those concerns.

So therefore when you look upon the history of this case, when you look upon the abeyance that was already here, that gap in time from July to December, that was done in everyone's best interest because if we look upon the transcripts of this case, we will note the in camera interviews, to arguments made by

- 11 -

counsel for all, that that abeyance was exercised to protect everybody's best interest and that truly was the reason for the delay.

So I fully understand, [counsel for Father], why you are bringing the petition. I believe that you supported it and argued it zealously. However, I am relying upon the overall paramount best interest standard and will deny both of those petitions.

N.T., 5/26/2017, at 16-18.

We conclude that the orphans' court did not abuse its discretion. While Father discusses the Adoption Act and this Court's case law interpreting subsections 2511(a)(1) and (b), he does not direct our attention to any legal authority indicating that termination of parental rights hearings must be held within a certain period of time after the filing of a petition, and acknowledges that no such authority exists. Father's Brief at 22. Our research has uncovered only a single published opinion addressing a similar issue, and it does not support Father's position. *See In re Adoption of C.J.P.*, 114 A.3d 1046, 1056 (Pa. Super. 2015) (rejecting the mother's claim that subsection 2511(b) violated her right to due process and equal protection, based on "the lengthy delay between the filing of the petition to terminate her parental rights and her termination hearing," which prevented the orphans' court from considering updated information on her parenting abilities).

Moreover, our review of the record does not reveal that Father suffered any prejudice as a result of the court's delay in conducting the termination hearing. The record indicates that Father received notice of the filing of the termination petition on May 7, 2015, and therefore had every reason to

remember and preserve relevant evidence. Father testified at length during the hearing, and did not indicate that he had any difficulty recalling the important details of the case. Indeed, regarding Father's lack of contact with Child, the court noted on the record that it "didn't hear one syllable from [F]ather where he indicated he didn't recall .... Father was quite confident in his testimony as to his contact." N.T., 5/26/2017, at 84. While Father indicated during the hearing that he did not remember when he changed his phone number, this detail was irrelevant to the court's decision. The court asked Father this question in an effort to ascertain why Father failed to attend his second visit with Child in November 2014. As discussed above, Father initially claimed that the caseworker may have left him a voicemail at his old phone number. *Id.* at 73. However, Father later admitted that he failed to attend his visit not because of a phone number change, but because he was in trouble with the law and did not want to be arrested. *Id.* at 78.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights involuntarily, and by denying his motions to dismiss. We therefore affirm the court's May 26, 2017 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2017